Tilghman C. J.
A rule having been laid, at the instance of James Hopkins, Esq. on John Cochran, Esq. secretary of the land office, to show cause why a mandamus should not issue, commanding the said Cochran to issue patents for sundry tracts of land, to be held by Robert E. Grijjith arid the said Hopkins in fee simple, as tenants in common, cause has been shown against the mandamus, which we are now to consider. The application to this Court was founded on an act of assembly, passed the 8th March, 1815. In this act, it is recited, that John Nicholson deceased, had entered applications, on the 21st April, 1794, for 202,400 acres of land, and given in payment, his check on the Bank of Pennsylvania, for the purchase money, which was dishonoured ; that on the 14th June, 1794, the said Nicholson had tendered to the receiver general the sum of §27,261 33 cts. which was refused to be received; that he afterwards transferred his right *474 under the said application,'to Joseph Boone, who obtained an order of the Board of Property for warrants in his favour, which was afterwards transferred by him to Philip Nicklin deceased, and the said Robert E. Griffith, merchants in company ; that about 80,000 acres of land having been found vacant and unappropriated, the said Nicklin and Griffth, paid to the receiver general, in moieties, the sum of % 10,720, the purchase money for 80,400 acres, whereupon warrants were issued in their favour, but doubts had been entertained, whether the said Nicklin and Griffth, ought to be charged with interest on the money tendered by the said Nicholson. After these recitals, it is enacted, “ that the secretary of the. “ land office be, and he is hereby directed, to issue patents to “• the said original "warrantees, or their legal representatives, “ upon the warrants granted for the said 80,400 acres of land, “• they paying for the surplus lands returned upon the sur- “ veys, with interest from the date of the warrants, and also “ paying the fees of office.” The. secretary of the land office, after observing, that he considers himself as constituted the judge, to decide who are the legal representatives of the original warrantees, declares, that he has been always ready to issue patents to those who shall prove themselves to be such, but that in his opinion, and also in the opinion of the Board of Property, it does not appear from the papers produced by Mr. Hopkins, that he, and Mr. Griffth, are the persons entitled to the patents. Without expressing a decided opinion, I incline to think, that the secretary is mistaken in imagining himself invested with judicial power. I rather suppose, that the act of assembly has assigned to him a ministerial duty, over the exercise of which this Court possesses a superintending power. But it is certain, that we ought not to interfere, unless in a case, where it is clearly made out, that the vsecretary has refused to perform the duty imposed on him by the act. Mr. Hopkins has laid before the court the same, papers which were produced to the secretary. From these papers it appears, that he claims a moiety of the lands, partly by virtue of a contract with Nicklin and Griffth, bearing date before the issuing of the warrants, and partly by a contract between himself and Robert E. Griffth of the one part, and Joseph Boone of the other part, made since the death of Philip Nicklin. I am apprehensive that the act of assembly is so drawn, as to render the task of the secretary a matter *475 iaf considerable difficulty, or perhaps I might more properly say, it will be difficult for those who apply for patents, to make out their case. The act of assembly has assumed, that Nicklin and Griffith were the legal proprietors of the warrants, and if so, it must be shown in what manner Philip Nicklin or his representatives, have parted with their interest. The act asserts, that Nicklin and Griffith paid for the land in moieties; if so, under the law as laid down by this Court, although the warrants issued to them as joint-tenants, yet in making out the patents, the grant will be to them as tenants in common. It is true, that vpon their request, the patents• might have conveyed to them an estate in joint-tenancy, and I observe, that by the agreement between Boone and Nicklin and Griffith, the legal title was to have been vested in Nicklin and Griffith as joint-tenants. Still it is not denied, that the heirs of Nicklin have an equitable interest, and by an act of assembly, passed 4th April, 180f, Griffith is restricted from selling or disposing of any part of the lands, held by him and the s.aid Nicklin, as tenants in common or otherwise, until he has given bond with security, in the Orphan’s Court of'Philadelphia county, for the proper application of the proceeds of sale, nor can he make a legal conveyance, even then, unless the administrators of Nicklin join in it. It has been remarked by Mr. Hopkins, that the last mentioned act of assembly, has no effect on this case, because Mr. Griffith is not making a sale, but only asking for patents for the purpose of making a sale. This is very true, but yet it appears, that in order to obtain Boone’s assignment of his interest in these lands, (which constitutes part of the title,) Mr. Griffith, in conjunction with Mr. Hopkins, has stipulated, that certain tracts of the warranted lands shall be conveyed to Boone; a stipulation which affects the rights of Mr. Nicklin’s representatives, and therefore could not lawfully be made, without the consent of his administrators, and security given as required by the act of assembly. So, that if the patents are now issued for the whole lands, to Griffith and Hopkins as tenants in common, Mr. Griffith will be vested with the uncontrouled right of disposing of one moiety, without complying with the terms intended to be imposed on him. I mention these difficulties as occurring to my mind, which cannot be removed without some act, in which the administrators of Nicklin shall concur, and I throw out for the *476 consideration of Mr. Hopkins, that it might possibly be the safest course, for all parties concerned to unite in an applica» tion for patents, to be issued to one person in trust for all who are interested, according to their respective rights, under the different articles of agreement. But against making the rule for a mandamus absolute, there is one decisive objection. The patents are asked for Griffith and Hopkins as tenants in common. Mr. Hopkins rests his title on articles of agreement, and payment of one half the purchase money, to the receiver general; but this is in contradiction- of the act of assembly, which asserts the purchase money to have been paid by Nicklin and Griffith in moieties, and in contradiction of the receipt of the receiver general, by which it appears, that the money was paid by Nicklin and Griffith, by the hands of Mr. Hopkins. Knowing Mr. Hopkins, I have not the least doubt, that half the money was in fact furnished by him. But sitting here, I can know nothing that is not proved. I cannot say then, that such a title has been shown in Griffith and Hopkins, as would authorise the issuing patents in the manner required. I am therefore of opinion, that sufficient cause has been shown, and the rule should be discharged.